Welcome you all here to the court today. We have a real interesting docket this morning. And we urge you to be mindful of our traffic light system so that when the yellow light on your podium comes on, you have two minutes. When the red light comes on, we ask you to conclude your argument unless you're answering a question from the court. Also, we are familiar with the briefs and record excerpts. We've probably not read the whole record, so we appreciate record citations when those are available. The first case of the morning is number 24-50247, United States v. Griffin. And we hear first from Mr. Hennies. Thank you, Judge Jones. May it please the court. In a long line of cases, this court has held that two incidents are not part of the same course of conduct simply because they both involve drugs. But that is exactly what the district court found here. The district court determined that Griffin's possession of drugs when he was arrested eight months after the conduct that ultimately resulted in his conviction was relevant conduct even though that later event involved no common participants or accomplices, it took place at a different location, it involved a drastically smaller amount of drugs, and there was no common source or supplier for those drugs. Under this court's precedent, that is simply not enough to establish the same course of conduct. And the district court's incorrect relevant conduct finding dramatically increased Griffin's sentencing exposure. It nearly doubled his guidelines range, and it prevented him from receiving safety valve relief from the mandatory minimum sentence. This court should vacate Griffin's sentence and remand for resentencing. There are two different ways that relevant conduct can be proved. I want to start briefly, the common scheme and plan prong. The government does not argue that particular prong applies here. And under this court's case law, I think it's pretty clear that it doesn't apply here. So I'm going to go to the same course of conduct prong. And that, of course, requires the court to weigh three factors, regularity, similarity, and the temporal proximity between the two events. And where one of those factors is lacking, one of the other ones needs to be pretty strong. And right here from the outset, we have a factor that's lacking, and that's regularity. The government doesn't argue that there is any kind of drug trafficking activity between the two events here, the June 21 offense that led to his conviction, and then the February 22 arrest. There's no repetition between them. So that is just completely lacking. Moving on to the similarity prong, again, this comes you know, many of this court's decisions have analyzed this, and Rhine, and Wall, and Miller, and it's just not enough that they both involve the same drugs. And even, you know, assuming that these are both trafficking offenses, that also doesn't matter. Well the fellow, apparently he was going to be a confidential informant, and that fell through. Do you disagree with that? I don't disagree with that. So he was either a CI because he watched other people trafficking, or because he had participated in it? I don't think there's any information as to what he knew or didn't know. I mean, there's no question that, you know, in June 21 that he was involved in, you know, trafficking meth. He had a substantial amount. We're taking that as a given. So, but there's no evidence that in the interim he was involved in any kind of trafficking. And in fact, I think that that kind of presents a clean break that shows that these two different episodes weren't part of a single episode. He stopped, he just stopped buying, and he just kept feeding his own habit. Is that the idea? There's no question that he was addicted to drugs. He was a, you know, 17-year combat veteran who came back and, you know, self-medicated. There's no question about that. But, you know, in Ryan, this court made clear that he doesn't have to prove a negative that he wasn't trafficking during that interval between his offense conduct and the ultimate arrest. That's not a burden on him, and there's certainly nothing in the record to suggest that he was doing anything during that time. Mr. Hennies, you're not contending that all three factors have to be present in order to uphold the relevant conduct analysis, correct? I think they all have to be present in some form. I mean, it's a balancing test, but, you know, here, no regularity. The similarity is really lacking under this court's precedent holding that, you know, two drug offenses or two drug incidents, that alone is not enough. And then the temporal proximity is kind of, I would say, neutral here. I mean, it's some evidence, you know, this court has held that within a year is, you know, it can be relevant conduct, but that's not a bright line rule. On similarity, you point out the differences in the amounts that were found in the two events. Are you challenging that the district court could not plausibly infer that both amounts of methamphetamine? Isn't that a similarity? So I think maybe they could infer that, but I also don't think it matters. And I would point the court to this court's decision in Miller. That involved two different incidents where the defendant was caught with cocaine, and they were both a substantial amount of cocaine. One was 2.2 kilograms, the other was 5 kilograms. So, you know, that's in the same ballpark as we have here, or in the same ballpark, whereas here, you know, it's a dramatically different amount. You know, he had 13 times more during his offensive conviction than he did during the arrest. But both amounts were distributable amounts. You can infer that they were distributable amounts, absolutely. And in Miller, you know, the government raised kind of the same argument they raised here. They say these are both distributable amounts, and they are more than personal use. And this court still said that's not enough to prove similarity. So I think even if you, you know, credit that the district court said these are both distributable amounts, under Miller, that's not enough to show similarity. And you know, Miller has another factor that's relevant here, different locations, you know, completely different cast of characters in both situations here. And that was relevant in Wall and Ryan. Well, there's no cast of characters in this one, though. You know, this isn't a conspiracy type thing. No, but, you know, even the people he was with both times were completely different. You know, the drug amounts were different. There's no indication that the drugs came from a common source or supplier. So really, under this long line of cases, the similarity just comes down to the fact that it's drugs. And even then, maybe drug distribution, even if we say that's fine, Wall and Ryan and Miller all say that that's not enough. And then, you know, again, when we get to the time interval, it's kind of, it's, you know, kind of, it's some evidence, I guess, that it's relevant conduct. But, you know, we need a strong showing, because there's no repetition. Well, if our case law indicates that a year may be kind of a cutoff in terms of temporal proximity. Sure, but a year— A year we're talking about less than a year. Sure, but a year is certainly not a bright line rule. In this Court's decision in Booker, and that's at 334 F. 3rd 406, that was a distance of nine months between a drug conspiracy and them finding some drugs in the defendant's house. And this Court said, you know, it's a close question, but there's no temporal proximity. Nine months is close, and I think that makes sense. It's some evidence. Did the Court affirm or reverse in that case? The Court found clear error and reversed and said that that was not relevant. Is that a published opinion? It is. I didn't remember that in the briefing. I don't think it was cited in the briefing, but it's 334 F. 3rd 406. So, you know, this Court has certainly found clear error in this kind of drug case where the temporal proximity was less than a year. And so, you know, really, when we're weighing these, I think, at the end of the day, Ryan, Wall, Miller, all these cases say the similarity is just not there. There's no evidence of repetition in between these two events, and the temporal proximity is kind of a toss-up. It's a little bit of evidence, but it's not strong evidence. What do you say to the Nava decision? I mean, there you have different controlled substances at issue, and the Court still upholds it, says it's a close call, but that it's plausible. You have temporal proximity within a year. You have different types of drugs, but it still evidences the trafficking of controlled substances, and that was found sufficient, at least on review by the appellate court. Judge Rodriguez, I think there was more similarity there. I'm trying to remember, and I can't off the top of my head, but I think there was more tying the two events together than just drugs. And, you know, that, again, I hate to come back to these three cases, Ryan, Wall, and Miller, but those are really kind of the Court's, you know, long-standing precedent that it's got to be more than just drugs. And when you put that in this fact pattern, it requires that these two events are not relevant conduct. So if there are no other questions, we would ask the Court to vacate. Well, thank you. I appreciate the succinctness. I forgot. I'm sorry to the courtroom. I forgot to introduce Judge Fernanda Rodriguez from the Southern District of Texas, who is visiting with us this week. So I figured I'd fix that problem. All righty. Ms. Durbin? May it please the Court, Laura Durbin for the United States. In finding that Mr. Griffin's two drug trafficking offenses were part of the same course of conduct, the District Court took a permissible view of the evidence, and that is all that is required for this Court to affirm. The first and second time Mr. Miller—or, excuse me, Mr. Griffin was found with distributable amounts of methamphetamine, they were sufficiently connected because they were relatively close in time and similar. In the first instance, Mr. Griffin was found with roughly one kilogram of methamphetamine in a hotel room with two other persons. In the second instance, he was found with 76 grams of methamphetamine in his residence alongside three firearms and over 100 rounds of ammunition. The District Court could plausibly infer the two were part of the same series of conduct. Specific to time, as the Court is already aware, that one year is a benchmark. Here we have less than a year, and so from that, the Court can plausibly infer that the two instances were part of the same course of conduct. In all these cases, specific to Wall, Miller, and Rhine, they are all over 21 months to 17 months. They're all well over a year. So at that point, when the Court looks to similarity, it is looking for—because the temporal connection is so weak, the similarity factor becomes that much more indicative of a same course of conduct finding. But the similarity here is Mr. Griffin is found with distributable amounts both times. He's the same actor in both times. He's possessing in both instances, unlike Rhine, wherein Rhine was found with, I think, roughly two grams of cocaine. He pleaded guilty to that. The other conduct they were trying to tie him to was 17 months prior, where they were trying to say he was basically a ringleader in this drug conspiracy, and he was the top leader. So to go from two grams of cocaine to now you are the ringleader and the main distributor in a 17-month period, that was just not similar enough, those two offenses. Specific to Wall, in Wall, he was only found with—I think it was marijuana in that case. He was found with marijuana in one instance at the border. The relevant conduct there, the determination was four years later, they were trying to tie him to someone that owned his truck that was found with marijuana in the truck, 78 kilos. I think it's something like that. And Ms. Durbin, is the government's position that all three factors are present here, including regularity, or do you concede, or is it the position that you have within the one-year period and there's sufficient similarity to warrant affirming the application? We have to rely on the temporal proximity and the similarity here. The only regularity is that he was found—it's bookend eight months apart that he's found with methamphetamine, but there are no intervening circumstances. You're not arguing that the district court could plausibly infer that Griffin continued trafficking methamphetamine between the two events? I think the district court could plausibly infer that. He's found in both—the only time law enforcement encounters Mr. Griffin is in both instances he has distributed amounts of methamphetamine. So there's no evidence that he ever ceased, but there also is no evidence that he was. But I think it was a reasonable inference the court could make. He—as Judge Jones, you pointed out, he was—tried to act as a confidential informant that nothing came of that, but we have bookend distributable amounts in this case. But when you say nothing, we don't know why nothing came of it. We don't know why. The AUSA at sentencing said maybe his addiction got the better of him, and there's no dispute that Mr. Griffin did have an addiction, but we don't know why there was a breakdown of that agreement. And then in both instances, though, I will say he has the same denial of why he has this distributable amount, which is ultimately damning in the eyes of the district court. In both times he's trying to claim—even though he pled guilty on his—with the interview with probation office prior to sentencing, he claims the one kilogram was for personal use. And he again claims the 76 grams found later was also for personal use. And the district court could easily dismiss that claim and say, no, Mr. Griffin, you're still in the same position. It's the same conduct that I am looking at, and I think you had this for distribution purposes, excuse me. And I think that was a plausible inference from the evidence. On the similarity prong, the cases discuss common source, supplier, accomplice, destination, or modus operandi. Would you agree that here it really comes down to modus operandi? There's no evidence of the other factors? Correct. Correct. Oh, yeah. And how did—what's the common modus operandi of these two events other than they both involve the same controlled substance? They both involve the same controlled substance. They both involve the same actor, which is very different from some of the cases that we're comparing to, where it's a conspiracy, where they're viewing that test to tie it to a conspiracy, versus here it's not—in the grand scheme, not fairly large amounts of distributable amounts, where one person—a district court could reasonably infer, okay, one person alone is distributing a kilogram amount. And that's kind of the big difference on similarity with some of these cases that we're citing in the brief. But there is no other evidence of common source. I will concede that there's no evidence in the record of that. And if there are no further questions, I yield back the remainder of my time. I guess not. Thank you, ma'am. Thank you. All right, Mr. Hennings—Mr. Griffin. No, Hennings. What am I saying? Briefly. The government started out, you know, reciting the standard of review and everything, and we're definitely here on clear air, but I just want to point out that this is a context where this Court does not hesitate to find clear air. Ryan, Miller, Wall, the Booker case I cited, and several others. So this is kind of one where this Court is, you know, ready to find clear air, especially when the precedent is pretty clear. On the similarity prong, essentially the government's argument comes down to the fact that this was a distributable amount in both instances. And I just—I want to read from Miller to be—because their argument there was the offenses were similar because they involved a conspiracy possession with the intent to distribute narcotics and drug amounts larger than for personal use. And that's the same argument they're raising here. And in Miller, the very next paragraph, they say his drug activities were not substantially connected or sufficiently similar. So it's just not enough that they were both distribution offenses, even if that was a plausible view of the evidence. On regularity, I think the government conceded there was no regularity and then said there was an inference that he never stopped. That's foreclosed by Ryan. Ryan says you aren't—you don't have to prove a negative. How is Mr. Griffin supposed to go to sentencing and prove that he didn't do something during that point? That—so that's gone. And temporal proximity, you know, we look at Booker, that's a close question at best. And the guidelines in this Court's case law are clear. When one of the factors is lacking, and that in this case is regularity, there's no regularity, there has to be a stronger presence of at least one of the other factors. And similarity is incredibly weak here, and temporal proximity is, you know, at best a toss-up. I mean, you reference temporal proximity as neutral, but isn't the case law really indicating that as long as you're within the one-year period, that is supportive evidence that would allow for the relevant conduct finding? It's some evidence. I agree, Judge Rodriguez. But it's certainly not a strong showing. I mean, eight months is a reasonable amount of time. You know, I mean, there's another thing involved here. There's some pathos about this guy's situation. But the other thing involved here is he's already under scrutiny. And, you know, if you're caught with a kilo of meth, that's a pretty big deal. And yet, eight months later, he's still got a distributable amount. I mean, my goodness. Judge Jones, I think there's . . . I mean, the other cases didn't feature that sort of defiance or overwhelming stupidity, right? Well, I think they often involve, you know, that's kind of the whole point of this line of cases, is that you often have an amount, and then at another time you . . . Yeah, but sometimes they're trying to do it with previous, preceding events. That's fair. And this one is after the guy's already been apprehended by law enforcement on a very large amount, and he's still doing it. That's fair. And there's no dispute that, you know, Mr. Griffin has an addiction to meth. I mean, I think it was . . . he came back from his tours of duty with the Army, and there's no question that that is something that he struggled with. But I don't know that that plays into the similarity, repetition, temporal proximity framework that this court applies to determine relevant conduct. You would ask the court to vacate. Just one other question. The . . . I mean, certainly the government focuses on two distributable amounts of methamphetamine. The other similarity factors, or possible similarity factors, are both instances individuals caught in any sort of a dwelling of sorts, a home, hotel room, not out in the open, street corner, with other individuals. Potentially discussing what to do with it, not saying that there's necessarily evidence in the record of that, but perhaps allowing a plausible inference. Aren't those also factors that could be considered as supporting the district court's finding that these are similar? I think Judge Rodriguez, those factors cut the other way. Because this court has repeatedly said, does it involve different accomplices,  And that's Ryan, Wall, and Miller. That's a factor that says they're not similar if it's different folks. And different locations in Miller, this court thought it was significant that one of the events took place at his place of work and another took place at a residence. That was something that differentiated the two incidents. So I think those actually cut the other way and show that these actually weren't similar events. So we would ask the court to vacate Griffin's sentence and remand for resentencing. All right. Thank you.